By the Court:

Monell, J.
The reason for dismissing the complaint is not stated in the papers before us, but it is to be presumed it was because the evidence failed to connect the defendant with the driver of the wagon, or to show any negligence on his part.
It appeared that the intestate was a vendor of vegetables, and was in Monroe street with a cart and horse, engaged in selling, *41 when he was knocked down by a pair of horses attached to a wagon. The horses were without a driver, and were running at a furious rate. One of the plaintiff’s witnesses (Ruckweg), being asked, “ Do you know who was the owner of the wagon or team which was running away?” answered, “Yes, sir; Mr. Kohler.” And another witness (Dunn) testified that the wagon to which the running horses were attached had the name of “ Mrs. Hopkins” on the sides and the name of “ J.. F. Kohler ” on the back.
The only evidence by which it was sought to connect the defendant with the driver of the wagon was that of the witness Lankenau. He testified that he kept a grocery on the corner of Scammel and Monroe streets, and had seen the defendant once.
Q. Are you in the habit of dealing with wagons belonging to him ?
A. Yes, sir; they used to furnish me with pies every day.
Q. What kind of wagons ? What do they deal in ?
A. High-top wagons; pies; Mrs. Hopkins’ name on the side.
Q. Do you remember seeing one of these wagons, marked “Mi’s. Hopkins’ Pie Bakery,” on the 24th of August, 1867?
A. I could not say the day, because I don’t remember; 1 saw a wagon run down Monroe street, some time last summer.
Q. The wagon which you saw run down Monroe street, where did it start from to run ?
A. It started from the south-east corner of Scammel and Monroe streets.
Q. Where was the driver of that wagon ?
A. One of them was in my store; the other, when I saw him, was running behind the wagon.
Q. Did he overtake the wagon ?
A. Ho, sir. *
Q. What was the one who was in the store there for?
A. He asked me if I wanted pies.
Q. Do you know what his name is ?
A. I do not.
Q. What name was on the rear of the wagon ?
A. I did not see it any nearer than half a block away.
*42 Q. Do you mean when it was arriving, or after it started ?
A. After it started; I was in the store attending to my business when it started; it started right across the way from my store.
Q. 'How long had the driver of this wagon been in your store when you saw the horses attached to the wagon running away ?
A. I don’t think more than three or four minutes.
Q. Did the one who was in your store go after the wagon and horses?
A. The other one was right after the wagon, the one who was outside; the one who was in my store ran after as soon as he could, but the outside one was close behind the wagon.
Q. This wagon that you saw run away was marked “ Mrs. Hopkins’ Pie Bakery ” ?
A. Tes, sir.
This is all the evidence.
I am inclined to think there was sufficient evidence, at least to have sent the case to the jury, that the defendant was the owner of the wagon and horses. One witness said he knew so of his own knowledge, and another witness testified to seeing the defendant’s name painted on the wagon. This was enough to have authorized the jury in finding the fact against the defendant.
But my difficulty is in finding any evidence whatever, that the drivers or persons (for there seem to have been two) in charge ■ of the wagon and horses, were the servants of the defendant.
I have extracted literally from the case all the evidence touching the question, and it entirely fails to establish any relation of master and servant.
It was not enough, in my judgment, to charge, the defendant with a liability for the wrongful act of the driver of the horses, merely to show that the defendant was the owner of the horses. They might have been let to the driver, and there might have been a relation of an entirely different nature than that of master and servant existing between him and the defendant. To apply the principle respondeat superior, an agency must be established, not by conjecture or inference merely, but by either positive *43 proof or by circumstances from which the conclusion can legitimately be drawn that the agency existed. A verdict against the defendant upon such evidence of the agency of the driver, as was given in this case, would not be allowed to stand. Such agency could be made out only by inference, drawn from the only fact proved, that the defendant owned the wagon and horses. The affirmative proof of an issue is not required to be conclusive, but it must be such as to authorize the finding that the fact exists; and where it is sought to charge a principal for the wrongful act of his agent, it requires something more than presumption or conjecture.
I also think the evidence was deficient in showing any negligence on the part of the driver or drivers of the wagon. The only proof was that the driver was off his seat, and the horses were running. It was not shown that the horses were left upon the street unattended; nor was any other fact shown from which it could be inferred that the driver was in any respect negligent. It might be quite as near the fact to suppose that the driver had been thrown from his seat by a collision for which he was in no way responsible, as to suppose he had left his horses unattended. There was no evidence on the subject, one way or the other; and the plaintiff’s counsel seems to have thought it was sufficient for him to show that the death was occasioned by the horses of the defendant. Such evidence alone would not sustain the allegation that the plaintiff’s husband was killed by the negligence of the defendant or of his servant.
For both reasons, therefore, I am of the opinion that there was not enough to go to the jury, and that it was proper to dismiss the complaint.
The judgment should be affirmed.